**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 20 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10318 |
| Plaintiff-Appellee, | D.C. Nos. 2:16-cr-00217-MCE-2 2:16-cr-00217-MCE |
| v. | |
| SHARMISTHA BARAI, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10347 |
| Plaintiff-Appellee, | D.C. Nos. 2:16-cr-00217-MCE-1 2:16-cr-00217-MCE |
| v. | |
| SATISH KARTAN, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted October 19, 2022
San Francisco, California

Before: S.R. THOMAS, M. SMITH, and KOH, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant Sharmistha Barai and Defendant Satish Kartan, wife and husband, appeal their convictions for conspiracy to commit forced labor in violation of 18 U.S.C. § 1594(b) and two substantive counts of forced labor in violation of 18 U.S.C. § 1589(a). Kartan also appeals his conviction for fraud in foreign labor contracting in violation of 18 U.S.C. § 1589(b). Both defendants also appeal their 188-month sentences. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1.      Kartan argues that the district court deprived him of his constitutional right to present a defense. However, the district court did not err in any of the ways in which Kartan claims. First, the district court did not err in refusing to allow Kartan to testify to statements he made to Rathanam Thamma because Kartan was later allowed to testify to those statements later in his direct examination. *See United States v. Strand*, 574 F.2d 993, 996 (9th Cir. 1978). Second, the district court was well within its discretion to manage the trial when it admonished Kartan for being nonresponsive and editorializing on cross examination. *See United States v. Scott*, 642 F.3d 791, 799 (9th Cir. 2011).

Third, the record shows that Kartan's withdrawal of testimony was knowing and voluntary. *See United States v. Kowalczyk*, 805 F.3d 847, 859 (9th Cir. 2015).

---

[1] In a concurrently filed opinion, we address Barai and Kartan's challenge to the district court's refusal to give a specific unanimity instruction with respect to the means by which Barai and Kartan obtained forced labor.

Kartan testified for almost a full day on direct examination by his counsel and Barai's counsel. After the district court admonished him several times for being nonresponsive on cross-examination, Kartan raised the possibility of withdrawing all his testimony and striking it from the record. Kartan's counsel affirmed multiple times that the withdrawal was made at Kartan's request. The district court asked Kartan directly if he would like to withdraw, to which Kartan answered affirmatively. When the district court asked Kartan before the jury whether he would like to withdraw, Kartan stated, "I was not allowed to speak the truth. I was not allowed to explain--." The district court then dismissed the jury and asked Kartan if he was changing his mind. Kartan answered negatively and clarified that he was merely objecting to the wording of the district court's question. After a discussion with his counsel, the jury returned, and Kartan stated that he was refusing to answer questions and moved to terminate and strike his testimony.

2.     The government did not comment in its closing argument on the fact that Kartan withdrew his testimony. The government discussed the participation of Barai, Kartan's wife, in the conspiracy to commit forced labor, including the testimony of three victims. Among other things, government counsel stated, "And you can evaluate her demeanor when answering questions. These defendants don't like answering questions. You know that from what the victims told you about how they responded when questioned. In addition to your observations. You have

her words." When read in context, this statement is not "naturally and necessarily" understood as commenting on Kartan's withdrawal. *See United States v. Mikhel*, 889 F.3d 1003, 1060 (9th Cir. 2018).

3.    The district court did not clearly err in refusing to instruct the jury not to draw adverse inferences against Barai from Kartan's withdrawal of his testimony. After Kartan withdrew his testimony, the district court instructed the jury that it was "to not consider and/or discuss any of his testimony during any of the deliberations to occur or have happened from this point forward. You are to consider the fact, in essence, that Mr. Kartan did not testify in this trial."[2] Barai failed to show how the absence of an adverse inference instruction affected her substantial rights or seriously affected the fairness, integrity, or public reputation of the trial. Although Barai argues that the jury could have inferred that Kartan's cross-examination testimony was unfavorable to her, the jury witnessed Kartan's complete direct examination by Kartan's counsel and Barai's counsel, which was favorable to Barai and otherwise consistent with Barai's testimony.

4.    Assuming without deciding that the district court abused its discretion in admitting as an excited utterance the hearsay statement of a nontestifying victim,

---

[2] To the extent that instruction could have led the jury to draw an adverse inference from Kartan's failure to testify, such an instruction is appropriate when a defendant refuses to answer questions on cross examination, which is what occurred in this case. *See United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999).

any error was harmless. The hearsay statement was only relevant to the conspiracy charge, for which the government presented overwhelming evidence of consistent mistreatment of nannies including the testimony of three victims, which was corroborated by an ER doctor, multiple neighbors, and Barai's and Kartan's text and WhatsApp messages. Further, we reject the argument that it was error to admit the nontestifying victim's reaction to Barai's car accident because the cases Barai cites in support of her argument are inapposite and because she otherwise fails to demonstrate how her substantial rights were affected or that this statement seriously affected the fairness, integrity, or public reputation of the proceedings. *See United States v. Magdaleno*, 43 F.4th 1215, 1221 (9th Cir. 2022).

The district court did not abuse its discretion in admitting Barai's email in which she stated that she hit her husband multiple times because Barai testified on direct examination that she never hit anyone. Thus, the evidence was admitted for the permissible purpose of impeachment. *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992).

Finally, the district court did not abuse its discretion in excluding as hearsay Kartan's statements made during "sting" calls with undercover agents posing as nannies. The statements were hearsay that did not fall under any exception to the hearsay rule, were not sufficiently reflexive or numerous to constitute habit evidence, and were not admissible under the rule of completeness because the

5

government did not seek to admit any portion of the recordings.

5. Barai and Kartan argue that there was insufficient evidence to support their convictions for conspiracy and forced labor and Kartan's conviction for fraud in foreign labor contracting. "We review de novo whether sufficient evidence supports a conviction, asking whether, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Moalin*, 973 F.3d 977, 1006 (9th Cir. 2020) (quoting *United States v. Chung*, 659 F.3d 815, 823 (9th Cir. 2011)).

The jury heard evidence that Thamma worked eighteen-hour workdays with no breaks or food. Thamma did not have a working cell phone, gave Kartan the only money she brought from India to purchase one, and never received the phone or her money. Barai threatened to kill Thamma and put her in the garbage, Barai hit Thamma in the mouth for asking to bring Thamma's clothes inside when she was supposed to feed the baby, and Barai burned Thamma's hands using a gas stove.

The jury also heard that Thapa worked similar hours with no breaks or food, and that Kartan repeatedly tried to take Thapa's phone away from her when she tried to use it. Defendants also came "close to [Thapa] as if they're going to beat [her]" and called her derogatory names, which caused her to be scared and

6

continue working. When Thapa tried to leave, Kartan refused to give her the address, gave her the wrong address, and threatened to call the police. The jury also saw similar evidence with respect to other nannies.

Finally, the jury saw text messages between Barai and Kartan in which Barai instructed Kartan on how to treat nannies. Viewing this evidence in the light most favorable to the prosecution, we conclude that the evidence is sufficient for a rational jury to find that Barai and Kartan committed forced labor and conspiracy to commit forced labor.

Second, the record contains sufficient evidence for a rational jury to conclude that Barai and Kartan obtained forced labor "by means of" prohibited activity. They argue that their actions caused victims to leave, rather than to provide forced labor. We have previously rejected a similar argument in a forced labor case. *See Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1156 (9th Cir. 2022). The fact that the defendants successfully obtained forced labor for only short periods does not preclude a jury from reasonably finding that it was initially successful.

Finally, the record contains sufficient evidence for a rational jury to conclude that Kartan had the intent to defraud requisite to convict Kartan of fraud in foreign labor contracting. Kartan represented to Thamma that she would be paid, but she was never paid. The record includes evidence that Kartan did not pay

7

two other victims. Kartan also took $500 from Thamma—the only money Thamma brought from India—to buy Thamma a cell phone, but Kartan never gave Thamma a cell phone or returned her money.

6.     Barai and Kartan argue that their sentences were procedurally unreasonable because the district court (1) did not comply with Fed. R. Crim. P. 32; (2) refused to consider late-submitted objections to their presentence reports ("PSR"); and (3) failed to adequately consider the sentencing factors in 18 U.S.C. § 3553(a). First, at Barai's sentencing hearing, the district court stated that it was overruling all objections and, at Kartan's sentencing hearing, it acknowledged that it had already ruled on all objections. At both sentencing hearings, the district court adopted the government's and probation's statement of facts, guidelines calculations, and sentencing recommendations as the basis for the district court's factual findings and legal conclusions. This is sufficient to satisfy Rule 32. *See United States v. Doe*, 488 F.3d 1154, 1158–59 (9th Cir. 2007); *United States v. Rigby*, 896 F.2d 392, 394 (9th Cir. 1990).

Second, the district court did not abuse its discretion in refusing to find good cause for the consideration of untimely objections to the PSRs. Barai's and Kartan's first set of sentencing counsel timely filed sentencing memoranda and objections to the PSRs. The court granted Barai's and Kartan's day-of-sentencing request to substitute new counsel. Barai's and Kartan's second set of sentencing

8

counsel filed new exhibits in support of mitigation.  After yet another substitution of sentencing counsel, Barai's and Kartan's third set of sentencing counsel filed a joint sentencing memorandum that also raised new objections to the PSRs about ten months after the deadline for such objections.  The district court considered the submissions of all three sets of sentencing counsel but did not find good cause to consider the untimely objections to the PSRs.  This was not error.  There is no reason why these untimely objections could not have been raised in Barai's and Kartan's timely filings.

Third, the district court did not plainly err in its consideration of the § 3553(a) factors.  The district court stated that it considered all sentencing filings, acknowledged that it reviewed the criteria in § 3553(a), and provided a reasoned justification for its sentences, which included the adoption of the government's and probation's analysis and the district court's discussion of facts specific to each defendant.  Thus, we are satisfied that the district court "has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

7.      Barai and Kartan further argue that their sentences were procedurally unreasonable because the district court abused its discretion in applying enhancements for (1) serious bodily injury, (2) use of a dangerous weapon,

9

(3) obstruction, and (4) vulnerable victims. First, the district court did not abuse its discretion in applying a two-level enhancement for the infliction of serious bodily injury. The record contains clear and convincing evidence that Thamma sustained first- and second-degree burns on both hands when Barai pushed her hands into a lit gas stove. Thamma testified that the injury was painful, and when an emergency room physician saw Thamma almost three days later, he diagnosed her with first- and second-degree burns on both hands and instructed nurses to clean and dress the injuries. We may reverse a district court for abuse of discretion only if the district court's decision is "illogical, implausible, or without support in the inferences that may be drawn from the record." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (quoting *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)). Here, the district court's decision does not rise to the level of an abuse of discretion.

Second, the district court did not abuse its discretion in applying a four-level enhancement for use of a dangerous weapon. The record contains sufficient circumstantial evidence to support the inference that Barai used the stove for the purpose of injuring or threatening to injure. *See United States v. Dayea*, 32 F.3d 1377, 1380 (9th Cir. 1994). Barai previously threatened to kill Thamma and hit Thamma in the mouth for asking to bring in her drying clothes. Despite being a doctor and causing the burn, Barai did not offer assistance after Thamma was

10

burned.

Third, the district court did not abuse its discretion in applying a two-level enhancement for obstruction.[3] Multiple witnesses contradicted Kartan's testimony "regarding so many facts on which []he could not have been mistaken, [so] there is ample support for the District Court's finding." *United States v. Dunnigan*, 507 U.S. 87, 95–96 (1993).

Fourth, the district court did not abuse its discretion in applying a two-level enhancement for vulnerable victims. Contrary to Barai and Kartan's argument, the crime of forced labor is not limited to foreign nannies. *Cf. United States v. Sierra-Velasquez*, 310 F.3d 1217, 1220 (9th Cir. 2002) (rejecting a similar argument). Thamma was vulnerable because she did not speak English; came to the United States on a tourist visa; did not have a working cell phone to contact her family; gave Kartan the only money she brought from India in order for Kartan to buy her a phone, but Kartan never gave her a phone or returned her money; and had limited knowledge of United States law. Thapa was vulnerable because she was unfamiliar with the neighborhood, American housing systems more generally, and United States law.

8. The district court's sentences were not substantively unreasonable; it

---

[3] Although Barai incorporates by reference Kartan's arguments about the procedural reasonableness of her sentence, Kartan's argument on this enhancement is inapplicable to Barai.

did not abuse its discretion in imposing a 188-month sentences for each defendant. Although the Ninth Circuit has declined to adopt the rule that a sentence imposed within the Guidelines range is presumptively reasonable, "we recognize that a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal." *United States v. Carty*, 520 F.3d 984, 988 (9th Cir. 2008). In this case, Barai's and Kartan's 188-month sentences fell in the middle of the Guidelines range. Although the enhancements raised the length of their sentences significantly above the base level offense, as discussed above, each of these enhancements was justified by the record. Additionally, the district court did not abuse its discretion in refusing to grant a downward variance in Barai's sentence to account for her ineligibility for good-time credit provided by the First Step Act because Barai is a noncitizen and may become removable from the United States.

**AFFIRMED.**